UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 22-61033-CIV-MARTINEZ-HUNT

RICHEMONT INTERNATIONAL SA, et al.,

        Plaintiffs,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

        Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

THIS CAUSE is before the Court upon Plaintiffs, Richemont International SA, Cartier International A.G., Officine Panerai A.G., and Van Cleef & Arpels SA (collectively, "Plaintiffs") Motion for Preliminary Injunction (the "Motion for Preliminary Injunction") (ECF No. 6), against Defendants,[1] pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a), for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).  The Honorable Jose E. Martinez, United States District Judge, referred the Motion for the Preliminary Injunction to the undersigned. ECF No. 8; *see also* 28 U.S.C. § 636(b); S.D. Fla. Mag. R. 1. The undersigned has carefully reviewed the pleadings, the record in this case, the applicable law and is otherwise fully advised in the premises.

---

[1] Defendants are the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" hereto.

The undersigned held a hearing on June 30, 2022, at which only counsel for Plaintiffs was present and available to present evidence supporting the Motion for Preliminary Injunction. Defendants have not responded to the Motion for Preliminary Injunction, nor made any filing in this case, nor have the Defendants appeared in this matter either individually or through counsel. For the reasons more fully discussed below, the undersigned respectfully RECOMMENDS that Plaintiffs' Motion for Preliminary Injunction (ECF No. 6) be GRANTED.

## I.     FACTUAL BACKGROUND[2]

Plaintiff, Richemont International SA, is the owner of the entire right, title and interest in and to the IWC trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "IWC Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| IWC | 1,205,403 | August 17, 1982 | IC 014 - Watches |
| IWC SCHAFFHAUSEN | 4,270,382 | January 8, 2013 | IC 014 - Watches, chronometers, clocks; straps for wristwatches, boxes of precious metal for watches and all the aforementioned goods from Switzerland |
| IWC | 4,322,600 | April 23, 2013 | IC 014 - Watches, chronometers, clocks, watch bands, boxes of precious metal for watches |

---

[2] The factual background is taken from Plaintiffs' Complaint (ECF No. 1), Plaintiffs' Motion for Preliminary Injunction (ECF No. 6), and supporting evidentiary submissions. Plaintiffs filed declarations and exhibits annexed thereto in support of their Motion for Preliminary Injunction. The declarations are available in the docket at the following entries: Declaration of Emma-Jane Tritton (ECF No. 6-1), Declaration of Stephen M. Gaffigan (ECF No. 6-2), Declaration of Kathleen Burns (ECF No. 6-3).

| PORTUGIESER | 4,412,785 | October 8, 2013 | IC 014 - Watches, chronometers, clocks, watch straps, watch bracelets, and boxes of precious metals for watches |
|---|---|---|---|

*See* ECF No. 6-1 at ¶ 7. The IWC Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See id.* at ¶ 7.

Plaintiff Cartier International A.G. is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "CARTIER Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CARTIER | 0,411,239 | January 9, 1945 | IC 014 - Precious-Metal Ware-namely, the following articles made, in whole or in part, of Precious Metals or Plated With the Same; Jewel Boxes, Fobs, Bracelets, Watch Bracelets And Buckles Therefore, not including Watches, Cuff Links, Brooches, Earrings, Eyeglass Cases, Cigarette Lighters, Ash Trays, Envelope Openers, Wallets, Money Clips, Perfume Bottles, Desk Sets, Handbags, Key Chains, Finger Rings. |

| | | | |
|---|---|---|---|
| *Cartier* | 0,411,240 | January 9, 1945 | IC 014 - Articles of Jewelry for Personal Wear and for Precious-Metal Ware-Namely, the Following Articles Made, in Whole or in Part, of Precious Metals or Plated with the Same-- viz, Jewel Boxes, Fobs, Bracelets, Watch Bracelets and Buckles Therefor, Not Including Watches, Cuff Links, Brooches, Earrings, Eyeglass Cases, Cigarette Lighters, Ash Trays, Envelope Openers, Wallets, Money Clips, Perfume Bottles, Desk Sets, Handbags, Key Chains, Finger Rings |
| *Cartier* | 0,411,975 | February 13, 1945 | IC 014 - Watches and Clocks and Wrist Watches with Wrist Straps and Bracelets Attached for Securing the Same on the Wrist of the Wearer, and Traveling Clocks and Watches with Covers of Leather, Fabric and the Like for Protecting Them While Traveling |
| CARTIER | 0,759,201 | October 29, 1963 | IC 014 - Watches and Clocks |
| LOVE BRACELET | 1,005,286 | February 25, 1975 | IC 014 - Jewelry-Namely, Bracelets |
| | 1,114,482 | March 6, 1979 | IC 014 - Articles of jewelry, watches |
| | 1,372,423 | November 26, 1985 | IC 014 – Bracelets |

| | | | |
|---|---|---|---|
| | 2,322,769 | February 29, 2000 | IC 014 – Watches |
| | 3,162,410 | October 24, 2006 | IC 014 - Jewelry, Namely, Bracelets, Watches, Rings, Charms, Earrings |
| BALLON BLEU | 3,476,888 | July 29, 2008 | IC 014 - Watches, Chronometers, Clocks |
| LOVE | 3,637,776 | June 16, 2009 | IC 014 - Goods Of Precious Metals And Coated Therewith, Namely, Cuff-Links, Rings, Bracelets, Earrings, Necklaces |
| | 3,776,794 | April 20, 2010 | IC 014 - Jewelry, Namely, Rings, Bracelets, Charms, Earrings, Made Of Precious Metals |
| Cartier | 4,178,047 | July 24, 2012 | IC 014 - Jewelry and watches |
| | 4,197,020 | August 28, 2012 | IC 014 - Jewelry and watches |
| | 4,483,522 | February 18, 2014 | IC 014 – Watches |
| | 4,487,142 | November 27, 2012 | IC 014 – Watches |

| | | | IC 014 – Watches |
|---|---|---|---|
| | 4,608,158 | September 23, 2014 | |

*See* ECF No. 6-1 at ¶ 13. The CARTIER Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See id.* at ¶ 13.

Plaintiff Officine Panerai A.G. is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "PANERAI Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| PANERAI | 2,340,290 | April 11, 2000 | IC 014 - Chronometers, watches |
| LUMINOR | 2,516,018 | December 11, 2001 | IC 014 - Chronometers, watches and clocks |
| | 3,178,943 | December 05, 2006 | IC 014 – Watches |
| | 3,942,579 | April 12, 2011 | IC 014 – Watches |

| OFFICINE PANERAI | 4,009,035 | August 9, 2011 | IC 014 - Watches and clocks; watch accessories, namely, watch straps, and buckles for watch bands and watch straps. |
| | 4,971,867 | June 7, 2016 | IC 014 - Watches |

*See* ECF No. 6-1 at ¶ 19. The PANERAI Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See id.* at ¶ 19.

Plaintiff Van Cleef & Arpels SA is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "VAN CLEEF Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
| --- | --- | --- | --- |
| Van Cleef & Arpels | 1,415,794 | November 4, 1986 | IC 014 - Jewelry and Watches |
| | 2,692,672 | March 4, 2003 | IC 014 – Jewelry; Watches |

| | | | |
|---|---|---|---|
| **ALHAMBRA** | 2,751,878 | August 19, 2003 | IC 014 - Precious Metal And Their Alloys And Products Made Thereof Or Coated Therewith Not Included In Other Classes, Namely, Jewelry, Horological And Chronometric Instruments, Namely, Watches And Watch Bracelets And Necklaces, Jewelry Chains Of Precious Metal, Earrings, Jewelry Rings, Pendants, Ankle Bracelets, Cuff Links, Studs Made Of Precious Metal |
| VAN CLEEF & ARPELS | 2,936,247 | March 29, 2005 | IC 014 - Items Made Of Precious Metal, Namely, Rings, Bracelets, Earrings, Necklaces, Pendants, Charms, Brooches, Clips, Hairclips, Jewelry Boxes, Jewelry Cases, Watch Bracelets And Buckles; Jewelry, Watches And Clocks |
| ALHAMBRA | 3,489,019 | August 19, 2008 | IC 014 - Jewelry; Clock And Watch Making, Namely, Watches, Watch Bracelets |
| | 4,326,883 | April 30, 2013 | IC 014 – Jewelry |
| | 4,653,258 | December 9, 2014 | IC 014 - Jewelry |
| | 4,763,030 | June 30, 2015 | IC 014 - Jewelry; Rings; Pendants; Earrings; Necklaces; Bracelets |

*See* ECF No. 6-1 at ¶ 25. The VAN CLEEF Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See id.* at ¶ 25.

Defendants, through the operation of various interactive, commercial Internet websites and an Internet based e-commerce store operating under the domain names and seller identification name identified on Schedule "A" hereto (the "Subject Domain Names and Seller ID"), have advertised, promoted, offered for sale, and/or sold goods bearing and/or using what Plaintiffs have determined to be counterfeits, infringements, reproductions and/or colorable imitations of the IWC Marks, CARTIER Marks, PANERAI Marks, and/or VAN CLEEF Marks (collectively "Plaintiffs' Marks"). *See* ECF No. 6-1 at ¶¶ 30-34; ECF No. 6-2 at ¶ 2; ECF No. 6-3 at ¶ 4 and Composite Exhibit 1 attached thereto, ECF No. 6-4 through ECF No. 6-6.

Although each Defendant may not copy and infringe each of the Plaintiffs' Marks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing that each Defendant has infringed, at least, one or more of the Plaintiffs' Marks. *See* ECF No. 6-1 at ¶¶ 30-34; ECF No. 6-3 at ¶ 4; ECF No. 6-4 through ECF No. 6-6. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of the Plaintiffs' Marks. *See* ECF No. 6-1 at ¶¶ 30, 33.

Plaintiffs' counsel retained Invisible Inc, a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiffs' branded products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit versions of Plaintiffs' branded products through the Subject Domain Names and Seller ID. *See* ECF No. 6-1 at ¶ 31; ECF No. 6-2 at ¶ 2; ECF No. 6-3 at ¶ 3. Invisible Inc accessed the Defendants' interactive commercial Internet websites and Internet based e-commerce store operating

under the Subject Domain Names and Seller ID[3], placed orders from each Defendant for the purchase of various products, all bearing and/or using, or suspected of bearing, counterfeits of, at least, one of Plaintiffs' Marks at issue in this action, and requested each product be shipped to the Southern District of Florida. ECF No. 6-3 at ¶ 4; ECF No. 6-4 through ECF No. 6-6. Each order was processed entirely online, and following the submission of the orders, Invisible Inc received information for finalizing payment[4] for the products ordered from Defendants to their respective PayPal accounts identified on Schedule "A" hereto.[5] *See id*. At the conclusion of the process, the detailed web page captures and images of the various branded products offered for sale and ordered via Defendants' Subject Domain Names and Seller ID were sent to Plaintiffs' representative for inspection. *See* ECF No. 6-1 at ¶¶ 4, 31-34; ECF No. 6-2 at ¶ 2.

Under the direct supervision of Plaintiffs' representative, Emma-Jane Tritton, Incopro Limited's reviewing representatives reviewed and visually inspected the branded goods offered for sale by Defendants and ordered by Invisible Inc from Defendants via the Subject Domain Names and Sellers IDs, and determined the products were not genuine versions of Plaintiffs' goods.  ECF No. 6-1 at ¶¶ 4, 33-34.

---

[3] In addition to operating its commercial Internet websites, Defendant Number 19 also operates an Internet based e-commerce store via non-party social media website Instagram.com under the seller identification names surich2099 a/k/a Surich Jewellery. Defendant Number 19 uses its Instagram.com e-commerce store to advertise its website, suricheh.com. ECF No. 6-3 at ¶ 4, n.1.

[4] Invisible Inc was instructed not to transmit the funds to finalize the sale for the orders from some of the Defendants' websites so as to avoid adding additional funds to Defendants' coffers. ECF No. 6-3 at ¶ 4, n.2.

[5] Additional contact email addresses provided by certain Defendants are also identified on Schedule "A" hereto. ECF No. 6-3 at ¶ 4, n.3.

On June 2, 2022, Plaintiffs filed their *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets. ECF No. 6.  On June 16, 2022, this Court entered a Sealed Order Granting Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order and temporarily restrained Defendants from infringing Plaintiffs' Marks at issue. ECF No. 9.  Pursuant to the June 16, 2022 Order, Plaintiffs properly served each Defendant with a copy of the *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, the Court's June 16, 2022 Order, and all filings in this matter. Thereafter, Plaintiffs filed certificates of service confirming service on Defendants. ECF Nos. 13 and 14.

## II.    LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F. 3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

## III.   ANALYSIS

The declarations Plaintiffs submitted in support of their Motion for Preliminary Injunction support the following conclusions of law:

A.    Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sales, offers for sale,

and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of Plaintiffs' Marks, and that the products Defendants are selling and promoting are copies of Plaintiffs' products that bear copies of Plaintiffs' Marks;

B.  Because of the infringement of Plaintiffs' Marks, Plaintiffs are likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiffs' Complaint, Motion for Preliminary Injunction, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiffs and to consumers because it is more likely true than not that:

1.  Defendants own or control Internet websites and Internet based e-commerce stores which advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiffs' rights; and

2.  There is good cause to believe that more counterfeit and infringing products bearing and/or using Plaintiffs' trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their genuine products.

C.  The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiffs, their respective reputations, and their goodwill as manufacturers and distributors of quality products, if such relief is not issued.

D.  The public interest favors issuance of the preliminary injunction to protect Plaintiffs' trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiffs' genuine goods.

E.     Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or using counterfeits and infringements of Plaintiffs' Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F.     Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.,* 51 F.3d at 987 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)); and

G.     In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV.   **RECOMMENDATION**

For the foregoing reasons, the undersigned respectfully RECOMMENDS that Plaintiffs' Motion for Preliminary Injunction (ECF No. 6), is GRANTED as follows:

1.      Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined until further Order of the Court:

     a.  From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using the Plaintiffs' Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiffs; and

     b.  From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing and/or using the Plaintiffs' Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Plaintiffs' Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

2.      Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of the Court, the use of Plaintiffs' Marks or any confusingly similar trademarks, on or in connection with all Internet websites and Internet based e-commerce stores owned and operated, or controlled by them, including the Internet websites and Internet based e-commerce store operating under the Subject Domain Names and Seller ID;

3.      Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of the Court, the use of Plaintiffs' Marks, or any confusingly similar trademarks within domain name extensions,

metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet websites and Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet websites and Internet based e-commerce store operating under the Subject Domain Names and Seller ID;

4.      Each Defendant shall not transfer ownership of the Subject Domain Names and Seller ID during the pendency of this Action, or until further Order of the Court;

5.      Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Subject Domain Names and Seller ID and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names and Seller ID that may have been deleted before the entry of this Order;

6.      Upon Plaintiffs' request, the privacy protection service for any of the Subject Domain Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered, to the extent not already done, to disclose to Plaintiffs the true identities and contact information of those registrants;

7.      Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, Inc. ("PayPal"), and their related companies and affiliates shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts, associated with the Internet websites and Internet based e-commerce store operating under the Subject Domain Names and Seller ID, the PayPal

payees, merchant identification numbers, and/or the e-mail addresses identified on Schedule "A" hereto, as well as any other related accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) and/or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court;

8. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to PayPal, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiffs' counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to PayPal, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

9. This Order shall apply to the Subject Domain Names and Seller ID, associated websites and e-commerce stores, and any other domain names, seller

identification names, e-commerce stores and websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting Plaintiffs' Marks at issue in this action and/or unfairly competing with Plaintiffs;

10.    Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

11.    As a matter of law, this Order shall no longer apply to any Defendant or associated domain name or e-commerce store dismissed from this action, or as to which Plaintiffs have withdrawn their request for a preliminary injunction;

12.    Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall maintain their previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

13.    Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the social media websites, messaging services, and/or financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, Instagram.com, and their related companies and affiliates shall, to the extent not already done, at Plaintiffs' request, provide Plaintiffs' counsel with any e-mail addresses known to be associated with Defendants' respective Subject Domain Names and Seller ID; and

14.     This Order shall remain in effect during the pendency of this action, or until such further dates as set by the Court or stipulated by the parties.

Within fourteen days after being served with a copy of this Report and Recommendation, any Party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The Parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE and ORDERED** at Fort Lauderdale, Florida, this 30th day of June, 2022.

PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Jose E. Martinez
All counsel of record

**SCHEDULE A:**
**DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME,**
**FINANCIAL ACCOUNT INFORMATION, AND E-MAIL ADDRESS**

| Def. No. | Subject Domain Name / Seller ID | PayPal Account / Merchant ID | PayPal Payee | E-mail Address |
|---|---|---|---|---|
| 1 | amoandco.ltd | amoandcojewel@gmail.com Merchant ID: 4LRPJG2JDV6HN | CHU VAN NINH | Contacts@amoandco.ltd Sales@amoandco.ltd sale.amoandco@gmail.com |
| 1 | amoandco.us | Merchant ID: 4LRPJG2JDV6HN | amoandco | Sales@amoandco.us Contacts@amoandco.us SON56KT3@GMAIL.COM |
| 2 | a-mazom.com | Merchant ID: 9TVA3RZBL6Y8N | 哈尔□□□□ □□□□司 | info@a-mazom.com kottbo@hotmail.com |
| 3 | atsimon.com | justcase2033@gmail.com Merchant ID: ULGHCDL4SZKBG | Onor | service@pike brand.com service@atsimon.com |
| 4 | christmon.info | ber8876@apureha.store Merchant ID: JE4K796GXKBBU FC54BQAZHE8NC | 成都若熙□□ □□□□ WORLDWIDE SALE&LLC | service@cartier-outlet.vip |
| 4 | skwatchz.store | josuesergio@web.de Merchant ID: PF2Q74RBP5J3U | 重□□□□□ □□□□□司 | service@cartier-outlet.vip |
| 5 | disnaba.com | Merchant ID: HB8NVEVTXYX4S | □□□□□ □□□□司 | service@casesnows.com |
| 6 | dssitryx.shop | luxudayjewelry@gmail.com Merchant ID: FN228QPSPNWYC | 冲冲 □ | luxudayjewelry@gmail.com luxuday@gmail.com |
| 7 | eronys.shop | ArlettaVailec@gmail.com Merchant ID: JGVR4LJSJUY2U | jia tao LTD | service@shopifyhelp.net info@noticecenters.com |
| 8 | frs.fo | billionniki@hotmail.com nehiphopmku@hotmail.com Merchant ID: 27KVWZZBLBQGE | 周口惠群商□ □□□□司 | replicawatchessale@yahoo.com |
| 9 | goreplicawatch.com | shirong132@outlook.com Merchant ID: 5BTDZP5VUUZC2 | 孕□□□□□ □□□□□□ 司 | charygreenc@gmail.com |

| | | | | |
|---|---|---|---|---|
| 10 | hixxwin.com | xuwei200205@outlook.com<br>Merchant ID:<br>JRTPDATMHXMZJ | | dengxm2020@gmail.com<br>botao20211@163.com |
| 11 | huanyitrade.com | cartiergood@163.com | □□ 林 | linjunyong72@gmail.com<br>vincienlin@gmail.com |
| 12 | jewsluxury.com | info@jewsluxury.com<br>Merchant ID:<br>F227BEMUATCCA | Jewluxury<br>Bui Duy Khai | info@jewsluxury.com |
| 13 | opclock.com | rparusy@bk.ru<br>cociobmdan@gmail.com<br>Merchant ID:<br>2T78GVFRPF6JY<br>PSU2JLWXGT274 | Socksoeu<br>SRL | aprolexcom@gmail.com |
| 14 | qtlogqa.shop | bzuqc4723jkc@gmail.com<br>Merchant ID:<br>NAZ39S54GWXP6 | □ □ □ □ □ | highjewelryfactory2022@gmail.com |
| 15 | scintillacase.com | Merchant ID:<br>8PZGM96PA6FQ8 | 江□ □ □ □ □<br>□ □ □ □ □ 司 | service@scintillacase.com |
| 16 | shinybracelet.com | Merchant ID:<br>VNZF63J783GEN | 刘富涛 | serve@shinybracelet.com |
| 17 | skwatch.site | Merchant ID:<br>XN4HWQZCFPX5Y | Online Shop | service@wristbase.club |
| 17 | wristbases.shop | Merchant ID:<br>XN4HWQZCFPX5Y | Online Shop | service@wristbase.club |
| 18 | storevip.ga | bobbyadamse6192@gmail.com<br>Merchant ID:<br>WFPGJ59G3TJPS | | services@enstock1g.top |
| 18 | vipshops2m.ga | bobbyadamse6192@gmail.com<br>lindaghj432clay@web.de<br>Merchant ID:<br>WFPGJ59G3TJPS | linda clay<br>@lclay67 | services@instock2.top<br>services@shops2p.gq |
| 19 | suricheh.com | ligeng5@outlook.com<br>Merchant ID:<br>DSXEKVLEGEY68 | wu han mei la ke ji you xian gong si | surichT@hotmail.com |
| 19 | surichek.com | Merchant ID:<br>MP8THGP4AMWBU | guang zhou han yuan mao yi you xian gong si | surichT@hotmail.com |

| | | | |
|---|---|---|---|
| 19 | surichen.com | service@hanyuanfirm.com | guang zhou han yuan mao yi you xian gong si | surichT@hotmail.com |
| 19 | suricheo.com | Merchant ID: DSXEKVLEGEY68 | wu han mei la ke ji you xian gong si | surichT@hotmail.com |
| 19 | surichep.com | Merchant ID: MP8THGP4AMWBU PGSBDEL9LUBPW | guang zhou han yuan mao yi you xian gong si guang zhou ye zhang shang mao you xian gong si | surichT@hotmail.com |
| 19 | suricheq.com | service@jushabusiness.com Merchant ID: Z7BCJ773UWSP6 | xia pu xian ju sa ri yong pin jing ying bu | surichT@hotmail.com |
| 19 | halamake.com | Merchant ID: MP8THGP4AMWBU | guang zhou han yuan mao yi you xian gong si | surichT@hotmail.com |
| 19 | surich2099 a/k/a Surich Jewellery | | | |
| 20 | top-watches.net | calatencu6@mail.ru Merchant ID: VEWVZ7G2RGFE8 | | cs.topwatches@gmail.com LUCAMOISEI@MAIL.RU |
| 21 | vibelydesign.com | dengsheng305@163.com Merchant ID: ZDKLX6SNPC338 | Caroline CO. | hello@vibelydesign.com |
| 22 | yuyaots.com | Merchant ID: FGG96W3YY4DMA | 泉州南□□□ □□□司 | contact@yuyaots.com |