UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 22-61033-CIV-MARTINEZ-HUNT

RICHEMONT INTERNATIONAL SA, et al.,

        Plaintiffs,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

        Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFFS' MOTION FOR FINAL DEFAULT JUDGMENT

THIS CAUSE comes before this Court upon Plaintiffs, Richemont International SA, Cartier International A.G., Officine Panerai A.G., and Van Cleef & Arpels SA (collectively, "Plaintiffs") Motion for Entry of Final Default Judgment Against Defendants[1] (the "Motion for Final Default Judgment").  ECF No. 28. The Honorable Jose E. Martinez, United States District Judge, referred the Motion for Final Default Judgment to the undersigned for a report and recommendation.  ECF No. 30. The undersigned has carefully reviewed the pleadings, the record in this case, the applicable law and is otherwise fully advised in the premises.

On June 1, 2022, Plaintiffs filed their Complaint, and on July 14, 2022, their Amended Complaint, against Defendants for trademark counterfeiting and infringement

---

[1] Defendants are the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" hereto.

under § 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I); false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II), common law unfair competition (Count III), and common law trademark infringement (Count IV). *See* ECF No. 21. In their Amended Complaint, Plaintiffs request the Court (1) enter a permanent injunction enjoining Defendants from producing or selling goods that infringe on their trademarks, ECF No. 21 at ¶ 85(a); (2) disable, or at Plaintiffs' election, transfer the domain names at issue to Plaintiffs, *Id.* at ¶ 85(d); (3) assign all rights, title, and interest, to the domain names to Plaintiffs and permanently delist, or deindex the domain names from any Internet search engines, *Id.* at ¶ 85(e, f); (4) remove the listings and associated images of goods bearing and/or using counterfeits and infringements of Plaintiffs' trademarks at issue, *Id.* at ¶ 85(i); (5) have the goods of each Defendant bearing one or more of Plaintiffs' trademarks held by the Internet marketplace and social media website operators be surrendered to Plaintiffs, *Id.* at ¶ 85(j); (6) order the permanent termination of any messaging services, seller identification names, usernames, social media accounts, and e-mail addresses used by Defendants, *Id.* at ¶ 85(k, l); and (7) award of statutory damages pursuant to 15 U.S.C. §1117(c), *Id.* at ¶ 85(n). For the reasons more fully discussed below, the undersigned respectfully RECOMMENDS that Plaintiffs' Motion for Final Default Judgment, ECF No. 28, be GRANTED.

## I.      FACTUAL BACKGROUND[2]

Plaintiff Richemont International SA is the owner of the entire right, title and interest in and to the IWC trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "IWC Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| IWC | 1,205,403 | August 17, 1982 | IC 014 - Watches |
| IWC SCHAFFHAUSEN | 4,270,382 | January 8, 2013 | IC 014 - Watches, chronometers, clocks; straps for wristwatches, boxes of precious metal for watches and all the aforementioned goods from Switzerland |
| IWC | 4,322,600 | April 23, 2013 | IC 014 - Watches, chronometers, clocks, watch bands, boxes of precious metal for watches |
| PORTUGIESER | 4,412,785 | October 8, 2013 | IC 014 - Watches, chronometers, clocks, watch straps, watch bracelets, and boxes of precious metals for watches |

*See* ECF No. 6-1 at ¶ 7. The IWC Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See id.* at ¶ 7.

Plaintiff Cartier International A.G. is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "CARTIER Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|

---

[2] The factual background is taken from Plaintiffs' Amended Complaint (ECF No. 21), Plaintiffs' Motion for Final Default Judgment (ECF No. 28), and supporting evidentiary submissions.

| | | | |
|---|---|---|---|
| CARTIER | 0,411,239 | January 9, 1945 | IC 014 - Precious-Metal Ware-namely, the following articles made, in whole or in part, of Precious Metals or Plated With the Same; Jewel Boxes, Fobs, Bracelets, Watch Bracelets And Buckles Therefore, not including Watches, Cuff Links, Brooches, Earrings, Eyeglass Cases, Cigarette Lighters, Ash Trays, Envelope Openers, Wallets, Money Clips, Perfume Bottles, Desk Sets, Handbags, Key Chains, Finger Rings. |
| *Cartier* | 0,411,240 | January 9, 1945 | IC 014 - Articles of Jewelry for Personal Wear and for Precious-Metal Ware-Namely, the Following Articles Made, in Whole or in Part, of Precious Metals or Plated with the Same-- viz, Jewel Boxes, Fobs, Bracelets, Watch Bracelets and Buckles Therefor, Not Including Watches, Cuff Links, Brooches, Earrings, Eyeglass Cases, Cigarette Lighters, Ash Trays, Envelope Openers, Wallets, Money Clips, Perfume Bottles, Desk Sets, Handbags, Key Chains, Finger Rings |
| *Cartier* | 0,411,975 | February 13, 1945 | IC 014 - Watches and Clocks and Wrist Watches with Wrist Straps and Bracelets Attached for Securing the Same on the Wrist of the Wearer, and Traveling Clocks and Watches with Covers of Leather, Fabric and the Like for Protecting Them While Traveling |
| CARTIER | 0,759,201 | October 29, 1963 | IC 014 - Watches and Clocks |
| LOVE BRACELET | 1,005,286 | February 25, 1975 | IC 014 - Jewelry-Namely, Bracelets |

| | | | |
|---|---|---|---|
|  | 1,114,482 | March 6, 1979 | IC 014 - Articles of jewelry, watches |
|  | 1,372,423 | November 26, 1985 | IC 014 – Bracelets |
|  | 2,322,769 | February 29, 2000 | IC 014 – Watches |
|  | 3,162,410 | October 24, 2006 | IC 014 - Jewelry, Namely, Bracelets, Watches, Rings, Charms, Earrings |
| BALLON BLEU | 3,476,888 | July 29, 2008 | IC 014 - Watches, Chronometers, Clocks |
|  | 3,637,776 | June 16, 2009 | IC 014 - Goods Of Precious Metals And Coated Therewith, Namely, Cuff-Links, Rings, Bracelets, Earrings, Necklaces |
|  | 3,776,794 | April 20, 2010 | IC 014 - Jewelry, Namely, Rings, Bracelets, Charms, Earrings, Made Of Precious Metals |
| Cartier | 4,178,047 | July 24, 2012 | IC 014 - Jewelry and watches |

| | 4,197,020 | August 28, 2012 | IC 014 - Jewelry and watches |
|---|---|---|---|
| | 4,483,522 | February 18, 2014 | IC 014 – Watches |
| | 4,487,142 | November 27, 2012 | IC 014 – Watches |
| | 4,608,158 | September 23, 2014 | IC 014 – Watches |

*See* ECF No. 6-1 at ¶ 13. The CARTIER Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See id.* at ¶ 13.

Plaintiff Officine Panerai A.G. is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "PANERAI Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| PANERAI | 2,340,290 | April 11, 2000 | IC 014 - Chronometers, watches |
| LUMINOR | 2,516,018 | December 11, 2001 | IC 014 - Chronometers, watches and clocks |

| | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
|  | 3,178,943 | December 05, 2006 | IC 014 – Watches |
|  | 3,942,579 | April 12, 2011 | IC 014 – Watches |
| OFFICINE PANERAI | 4,009,035 | August 9, 2011 | IC 014 - Watches and clocks; watch accessories, namely, watch straps, and buckles for watch bands and watch straps. |
|  | 4,971,867 | June 7, 2016 | IC 014 - Watches |

*See* ECF No. 6-1 at ¶ 19. The PANERAI Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See id.* at ¶ 19.

Plaintiff Van Cleef & Arpels SA is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "VAN CLEEF Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Van Cleef & Arpels | 1,415,794 | November 4, 1986 | IC 014 - Jewelry and Watches |
|  | 2,692,672 | March 4, 2003 | IC 014 – Jewelry; Watches |
| **ALHAMBRA** | 2,751,878 | August 19, 2003 | IC 014 - Precious Metal And Their Alloys And Products Made Thereof Or Coated Therewith Not Included In Other Classes, Namely, Jewelry, Horological And Chronometric Instruments, Namely, Watches And Watch Bracelets And  Necklaces, Jewelry Chains Of Precious Metal, Earrings, Jewelry Rings, Pendants, Ankle Bracelets, Cuff Links, Studs Made Of Precious Metal |
| VAN CLEEF & ARPELS | 2,936,247 | March 29, 2005 | IC 014 - Items Made Of Precious Metal, Namely, Rings, Bracelets, Earrings, Necklaces, Pendants, Charms, Brooches, Clips, Hairclips, Jewelry Boxes, Jewelry Cases, Watch Bracelets And Buckles; Jewelry, Watches And Clocks |
| ALHAMBRA | 3,489,019 | August 19, 2008 | IC 014 - Jewelry; Clock And Watch Making, Namely, Watches, Watch Bracelets |
|  | 4,326,883 | April 30, 2013 | IC 014 – Jewelry |
|  | 4,653,258 | December 9, 2014 | IC 014 - Jewelry |

| | 4,763,030 | June 30, 2015 | IC 014 - Jewelry; Rings; Pendants; Earrings; Necklaces; Bracelets |
|---|---|---|---|

*See* ECF No. 6-1 at ¶ 25. The VAN CLEEF Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See id.* at ¶ 25.

Defendants, through the operation of various interactive, commercial Internet websites and an Internet based e-commerce store operating under the domain names and seller identification name identified on Schedule "A" hereto (the "Subject Domain Names and Seller ID"), have advertised, promoted, offered for sale, and/or sold goods bearing and/or using what Plaintiffs have determined to be counterfeits, infringements, reproductions and/or colorable imitations of the IWC Marks, CARTIER Marks, PANERAI Marks, and/or VAN CLEEF Marks (collectively "Plaintiffs' Marks"). *See* ECF No. 6-1 at ¶¶ 30-34; ECF No. 6-2 at ¶ 2; ECF No. 6-3 at ¶ 4 and Composite Exhibit 1 attached thereto, ECF No. 6-4 through ECF No. 6-6; ECF No. 24-1 at ¶¶ 4-5; ECF No. 24-2 at ¶ 5 and Composite Exhibit 1 attached thereto, ECF No. 24-3.

Although each Defendant may not copy and infringe each of the Plaintiffs' Marks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing that each Defendant has infringed, at least, one or more of the Plaintiffs' Marks. *See* ECF No. 6-1 at ¶¶ 30-34; ECF No. 6-3 at ¶ 4; ECF No. 6-4 through ECF No. 6-6; ECF No. 24-2 at ¶ 5; ECF No. 24-3. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of the Plaintiffs' Marks. *See* ECF No. 6-1 at ¶¶ 30, 33.

Prior to filing this action, Plaintiffs' counsel retained Invisible Inc, a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiffs' branded products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit versions of Plaintiffs' branded products through the Subject Domain Names and Seller ID. *See* ECF No. 6-1 at ¶ 31; ECF No. 6-2 at ¶ 2; ECF No. 6-3 at ¶ 3. Invisible Inc accessed the Defendants' interactive commercial Internet websites and Internet based e-commerce store operating under the Subject Domain Names and Seller ID[3], placed orders from each Defendant for the purchase of various products, all bearing and/or using, or suspected of bearing, counterfeits of, at least, one of Plaintiffs' Marks at issue in this action, and requested each product be shipped to the Southern District of Florida. ECF No. 6-3 at ¶ 4; ECF No. 6-4 through ECF No. 6-6. Each order was processed entirely online, and following the submission of the orders, Invisible Inc received information for finalizing payment[4] for the products ordered from Defendants to their respective PayPal accounts identified on Schedule "A" hereto.[5] *See id*. At the conclusion of the process, the detailed web page captures and images of the various branded products offered for sale and

---

[3] In addition to operating its commercial Internet websites, Defendant Number 19 also operates an Internet based e-commerce store via non-party social media website Instagram.com under the seller identification names surich2099 a/k/a Surich Jewellery. Defendant Number 19 uses its Instagram.com e-commerce store to advertise its website, suricheh.com. ECF No. 6-3 at ¶ 4, n.1.

[4] Invisible Inc was instructed not to transmit the funds to finalize the sale for the orders from some of the Defendants' websites so as to avoid adding additional funds to Defendants' coffers. ECF No. 6-3 at ¶ 4, n.2.

[5] Additional contact email addresses provided by certain Defendants are also identified on Schedule "A" hereto. ECF No. 6-3 at ¶ 4, n.3.

ordered via Defendants' Subject Domain Names and Seller ID were sent to Plaintiffs' representative for inspection.  *See* ECF No. 6-1 at ¶¶ 4, 31-34; ECF No. 6-2 at ¶ 2.

Under the direct supervision of Plaintiffs' representative, Emma-Jane Tritton, Incopro Limited's reviewing representatives reviewed and visually inspected the branded goods offered for sale by Defendants and ordered by Invisible Inc from Defendants via the Subject Domain Names and Sellers IDs, and determined the products were not genuine versions of Plaintiffs' goods.  ECF No. 6-1 at ¶¶ 4, 33-34.

After the Court's entry of the Temporary Restraining Order, Plaintiffs discovered Defendant Numbers 1, 10, 11, 12, 19, and 21 were using additional aliases and Defendant Numbers 1, 11, 19, and 21 were using additional PayPal accounts to receive money in connection with their respective Subject Domain Names and Seller ID.  *See* ECF No. 24-1 at ¶¶ 4-5; ECF No. 24-2 at ¶ 5; ECF No. 24-3.) The additional aliases and PayPal accounts are included in Schedule "A" hereto.

On June 2, 2022, Plaintiffs filed their *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants pursuant to Federal Rule of Civil Procedure 4(f)(3) (ECF No. 7), which the Court granted on June 16, 2022 (ECF No. 10). Pursuant to the Court's Order, Plaintiffs served Defendants with their respective Summons and a copy of the Amended Complaint via e-mail and via website posting on July 19, 2022. *See* Declaration of Stephen M. Gaffigan (ECF No. 28-1) at ¶ 8; *see also* (ECF No. 25), proof of service.

The time allowed for Defendants to respond to the Amended Complaint has expired. *See* ECF No. 28-1 at ¶ 9. Defendants have not been granted any extension of time to respond, nor have they served or filed an Answer or other response. *Id.* at ¶ 10.

Plaintiffs assert that, to their knowledge, none of the Defendants are infants or incompetent persons, and upon information and belief, the Servicemembers Civil Relief Act does not apply. *Id.* at ¶ 11. On August 11, 2022, Plaintiffs filed their Request for Clerk's Entry of Default against Defendants, ECF No. 26, and the Clerk subsequently entered default against each Defendant on August 12, 2022 for failure to plead or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, ECF No. 27.

## II.    <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (internal quotations and citations omitted). However, "a defendant's default does not in itself warrant the court entering a default judgment." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The Court must determine whether there is a sufficient basis in the pleadings for the judgment. *See id*.

## III.    <u>DISCUSSION</u>

### A.    Liability

      1.    *Trademark Counterfeiting and Infringement Under 15 U.S.C. § 1114 (Count I).*

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark … which … is

likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a) (alterations added). To prevail on the merits of a trademark infringement claim, a plaintiff must show that "(1) its mark has priority, (2) defendant used its mark in commerce, and (3) defendant's mark is likely to cause consumer confusion." *PetMed Express*, 336 F. Supp. 2d at 1217-18 (citing *Int'l Cosmetics Exch., Inc., v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242 (11th Cir. 2002)). Plaintiffs have sufficiently alleged and established each of these elements: (1) Plaintiffs' ownership of the trademarks at issue precede Defendants' infringement, *see* ECF No. 21 at ¶¶ 19, 25, 31, 37; (2) Defendants advertised, offered for sale, and sold goods in commerce bearing and/or using the Plaintiffs' Marks without Plaintiffs' consent or authorization, *see id.* at ¶¶ 43-45, 49; and (3) the marks used on the goods Defendants advertised, offered for sale, and sold are so similar to the Plaintiffs' Marks that they are likely to cause consumer confusion, *see id.* at ¶¶ 43-44, 51, 61-62. Accordingly, Plaintiffs are entitled to a default judgment on their trademark counterfeiting and infringement claim.

2. *False Designation of Origin Under 15 U.S.C. § 1125(a) (Count II).*

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiffs must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiffs. *See* 15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be

deceived or confused by the similarity of the marks at issue." *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). As noted above, Plaintiffs' well-pled allegations establish Plaintiffs' ownership of the Plaintiffs' Marks, *see* ECF No. 21 at ¶¶ 19, 25, 31, 37, and there is a likelihood of consumer confusion due to Defendants' use of the Plaintiffs' Marks, *see id.* at ¶¶ 43-44, 51, 61-62. As such, Plaintiffs are entitled to a default judgment on their false designation of origin claim.

### 3. *Common-Law Unfair Competition and Trademark Infringement (Counts III and IV).*

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, No. 83- 8381-Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987). Additionally, the analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217–18 (S.D. Fla. 2004). As discussed above, Plaintiffs have alleged all the elements for statutory trademark infringement. Thus, Plaintiffs are also entitled to default judgment on their claims for common law unfair competition and common law trademark infringement.

### B.    Injunctive Relief and Damages

Plaintiffs request an award of equitable relief and monetary damages against Defendants. This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1

(S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing). Where, as here, a plaintiff seeks statutory damages and has filed detailed declarations and documentary evidence, a hearing is unnecessary to determine damages. *See Petmed*, 336 F. Supp. 2d at 1217.

Based on the default entered against Defendants, Plaintiffs' well-pleaded allegations of fact in the Amended Complaint are admitted and thus not in dispute. *See, e.g., Eagle Hosp. Physician*s, 561 F.3d at 1307. Plaintiffs have also presented sufficient evidence to support their request for a permanent injunction and statutory damages. As such, Plaintiffs are entitled to the entry of a final default judgment awarding the relief sought.

### 1. *Injunctive Relief*

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing

infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiffs have carried their burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiffs' Amended Complaint alleges that Defendants' unlawful actions have caused Plaintiffs irreparable injury and will continue to do so if Defendants are not permanently

enjoined. *See* ECF No. 21 at ¶¶ 57, 65, 73, 78, 84. Further, the Amended Complaint alleges, and the submissions by Plaintiffs show, that the goods promoted, advertised, offered for sale, and sold by Defendants are nearly identical to Plaintiffs' genuine products and that consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiffs' genuine products. *See id.* at ¶ 44 ("The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in or through Defendants' websites and e-commerce store are genuine goods originating from, associated with, and/or approved by Plaintiffs.").

Plaintiffs have no adequate remedy at law so long as Defendants continue to operate the Subject Domain Names and Seller ID because Plaintiffs cannot control the quality of what appears to be their products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiffs' respective reputations and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiffs face hardship from loss of sales and their inability to control their respective reputations in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks, which is an illegal act. Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.").

The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defendants have created an Internet-based counterfeiting scheme and are profiting from their deliberate misappropriation of Plaintiffs' rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities by canceling or transferring the Subject Domain Names to Plaintiffs, assigning all rights, title, and interest to the Subject Domain Names to Plaintiffs, disabling, de-indexing or delisting the Internet websites from search engines, having their listings and images removed and their goods held by the Internet marketplace surrendered to Plaintiffs, and terminating any messaging services, seller identification names, usernames, social media accounts, and e-mail addresses used by Defendants, such that these means may no longer be used as instrumentalities to further the sale of counterfeit goods.

2. *Statutory Damages*

Plaintiffs request an award of statutory damages against Defendants for trademark infringement in Count I. Plaintiffs assert that damages for Count II, III, and IV are encompassed in Count I. *See* ECF No. 28 at 16.

<u>Damages as to Count I for Trademark Counterfeiting and Infringement</u>

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs have elected to recover an award of statutory damages as to Count I of the Amended Complaint. *See* ECF No. 28 at 14.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff

failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.*, S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

Here, the allegations in the Amended Complaint and the evidence establish Defendants intentionally copied the Plaintiffs' Marks for the purpose of deriving the benefit of Plaintiffs' respective famous reputations. Defendants have defaulted on Plaintiffs' allegations of willfulness. *See* ECF No. 21 ¶ 50; *see also Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (citation omitted) (concluding a court may infer willfulness from the defendants' default). As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one (1) type of good bearing at least two (2) marks which are in fact counterfeits of Plaintiffs' Marks. *See* ECF No. 21 at ¶¶ 19, 25, 31, 37, 43-45, 60-61; ECF No. 6-1 at ¶¶ 4, 30-34; *see also* ECF Nos. 6-4 through 6-6; ECF No. 24-3. And, as noted, based upon the evidence Plaintiffs have presented, it is reasonable to infer each Defendant's infringement was willful. As such, Plaintiffs suggest the Court award statutory damages of $500,000.00 per mark, per type of good. As each Defendant used at least two counterfeit marks on one type of good,

Plaintiffs suggest the Court award statutory damages of $1,000,000.00 against each Defendant as partial compensation to Plaintiffs and to deter Defendants and others from continuing to counterfeit Plaintiffs' trademarks. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). The Undersigned finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just. *See*, *Cartier Int'l A.G. v. A1Marketing*, Case No. 18-cv-62640-JEM (S.D. Fla. Apr. 3, 2019) (awarding $1,000,000.00 in statutory damages against each Defendant); *Louis Vuitton Malletier, S.A. v. 7o2jMKqFz*, Case No. 18-cv-61098-JEM (S.D. Fla. Aug. 28, 2018) (awarding $1,000,000.00 in statutory damages against each Defendant); *Chanel, Inc. v. 9812198121*, Case No. 18-cv-61100-JEM (S.D. Fla. Aug. 21, 2018) (awarding $1,000,000.00 in statutory damages against each Defendant); *see also Chanel, Inc. v. China,* No. 21-CV-60308-RAR, 2021 U.S. Dist. LEXIS 121704 (S.D. Fla. May 13, 2021, docketed May 14, 2021) (awarding $1,000,000.00 in statutory damages against each Defendant). Accordingly, Plaintiffs should be awarded $1,000,000.00 in statutory damages against each Defendant pursuant to 15 U.S.C. § 1117(c).

## IV.   **RECOMMENDATION**

For the foregoing reasons, the undersigned respectfully RECOMMENDS that Plaintiffs' Motion for Final Default Judgment, ECF No. 28, be GRANTED and Final Default Judgment and Permanent Injunction be entered as follows:

1. Permanent Injunctive Relief:

The Defendants and their officers, directors, agents, representatives, subsidiaries, distributors, servants, employees and attorneys, and all persons acting in concert and participation with the Defendants are hereby permanently restrained and enjoined from:

a.  manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods bearing and/or using Plaintiffs' trademarks, or any confusingly similar trademarks, identified in Paragraphs 19, 25, 31, and 37 of the Amended Complaint ("Plaintiffs' Marks");

b.  using the Plaintiffs' Marks in connection with the sale of any unauthorized goods;

c.  using any logo, and/or layout which may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs;

d.  falsely representing themselves as being connected with Plaintiffs, through sponsorship or association;

e.  engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiffs;

f.  using any reproduction, counterfeit, copy, or colorable imitation of the Plaintiffs' Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants;

g.  affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by Defendants as being those of Plaintiffs or in any way endorsed by Plaintiffs and from offering such goods in commerce;

h.  otherwise unfairly competing with Plaintiffs;

i.  using the Plaintiffs' Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and from any other form of use of such terms which are visible to a computer user or serves to direct computer searches

to websites, Internet based e-commerce stores, seller identities, or website businesses registered by, owned, or operated by Defendants; and

j.  effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

2.  Additional Equitable Relief:

a.  In order to give practical effect to the Permanent Injunction, the domain names identified on Schedule "A" hereto (the "Subject Domain Names") are hereby ordered to be immediately transferred by the corresponding Defendants also identified on Schedule "A" hereto, their assignees and/or successors in interest or title, and the Registrars to Plaintiffs' control. To the extent the current Registrars do not facilitate the transfer of the Subject Domain Names to Plaintiffs' control within five (5) days of receipt of this Judgment, upon Plaintiffs' request, those corresponding Defendants and the top level domain (TLD) Registry for each of the Subject Domain Names, or their administrators, including backend registry operators or administrators, shall, within thirty (30) days, (i) change the Registrar of Record for the Subject Domain Names to a Registrar of Plaintiffs' choosing, and that Registrar shall transfer the Subject Domain Names to Plaintiffs, or (ii) place the Subject Domain Names on Registry Hold status for the life of the current registration, thus removing them from the TLD zone files maintained by the Registries which link the Subject Domain Names to the IP addresses where the associated websites are hosted;

b.  Defendants, their agent(s) or assign(s), shall assign all rights, title, and interest, to their Subject Domain Name(s) to Plaintiffs and, if within five (5) days of receipt of this Order Defendants fail to make such an assignment, the Court shall order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a);

c.  Defendants, their agent(s) or assign(s), shall instruct in writing all search engines to permanently delist or deindex the Subject Domain Name(s) and, if within five (5) days of receipt of this Order Defendants fail to make such a written instruction, the Court shall order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a);

d.  Plaintiffs may serve this injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks;

    e.  Upon Plaintiffs' request, Defendants shall request, in writing, permanent termination of any messaging services, seller identification names, usernames, and social media accounts they own, operate, or control on any messaging service and social media platform;

    f.  Upon Plaintiffs' request, any messaging service, Internet marketplace and social media website operators and/or administrators for the Seller ID, including but not limited to Instagram.com, shall permanently remove from the multiple platforms, which include, inter alia, a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks via the e-commerce store operating under the Seller ID, and any other listings and images of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks or linked to any other alias e-commerce stores, seller identification names, user names, and private messaging accounts being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the Plaintiffs' Marks; and

    g.  Upon Plaintiffs' request, Defendants and any Internet marketplace and social media website operators and/or administrators, who are in possession, custody, or control of Defendants' goods bearing and/or using one or more of Plaintiffs' Marks, including but not limited to Instagram.com, shall permanently cease fulfillment of and sequester those goods, and surrender those goods to Plaintiffs.

3.  Statutory damages in favor of the Plaintiffs pursuant to 15 U.S.C. § 1117(c).

    a.  Award the Plaintiffs damages of $1,000,000.00 against each Defendant, for which let execution issue, based upon the Court's finding that each Defendant infringed at least two trademarks on one type of good. The Court considered both the willfulness of each Defendant's conduct and the deterrent value of the award imposed, and the awarded amount falls within the permissible statutory range under 15 U.S.C. § 1117(c).

4.  All funds currently restrained or held on account for all Defendants by all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, Inc. ("PayPal"), and their related companies and affiliates, are to be immediately (within 5 business days), transferred by the previously referred to financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms

and by Defendants, to Plaintiffs and/or Plaintiffs' counsel in partial satisfaction of the monetary judgment entered herein against each Defendant. All financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, and their related companies and affiliates, shall provide to Plaintiffs at the time the funds are released, a breakdown reflecting the (i) total funds restrained in this matter per Defendant; (ii) the total chargebacks, refunds, and/or transaction reversals deducted from each Defendant's funds restrained prior to release; and (iii) the total funds released per Defendant to Plaintiffs.

5. Interest from the date this action was filed shall accrue at the legal rate. *See* 28 U.S.C. § 1961.

6. The bond posted by the Plaintiffs in the amount of $10,000.00 is ordered to be released by the Clerk.

7. The Court retains jurisdiction to enforce this Final Default Judgment and Permanent Injunction.

8. The Clerk shall **CLOSE** this case. All deadlines and hearing are **TERMINATED,** and any pending motions are **DENIED AS MOOT.**

Within fourteen days after being served with a copy of this Report and Recommendation, any Party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. §636(b)(1); S.D. Fla. Mag. R. 4(b). The Parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on

unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

   **DONE and SUBMITTED** at Fort Lauderdale, Florida, this 18th day of October 2022.


_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
The Honorable Jose E. Martinez
All counsel of record

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, SELLER ID,**
**FINANCIAL ACCOUNT INFORMATION, AND E-MAIL ADDRESS**

| Def. No. | Subject Domain Name / Seller ID | PayPal Account / Merchant ID | PayPal Payee | E-mail Address |
|---|---|---|---|---|
| 1 | amoandco.ltd | amoandcojewel@gmail.com Merchant ID: 4LRPJG2JDV6HN | CHU VAN NINH | Contacts@amoandco.ltd Sales@amoandco.ltd sale.amoandco@gmail.com |
| 1 | amoandco.us | Merchant ID: 4LRPJG2JDV6HN | amoandco | Sales@amoandco.us Contacts@amoandco.us SON56KT3@GMAIL.COM |
| 1 | amoandco.com | | | Sales@amoandco.com Contacts@amoandco.com |
| 1 | amojeury.com | amoluxury68@gmail.com Merchant ID: 85P8QAP2TU9ZU | amoluxury68 | Contacts@amojeury.com contacts@amojewry.com |
| 2 | a-mazom.com | Merchant ID: 9TVA3RZBL6Y8N | 哈尔□□□□ □□□□□司 | info@a-mazom.com kottbo@hotmail.com |
| 3 | atsimon.com | justcase2033@gmail.com Merchant ID: ULGHCDL4SZKBG | Onor | service@pike brand.com service@atsimon.com |
| 4 | christmon.info | ber8876@apureha.store Merchant ID: JE4K796GXKBBU FC54BQAZHE8NC | 成都若熙□□ □□□□□ WORLDWIDE SALE&LLC | service@cartier-outlet.vip |
| 4 | skwatchz.store | josuesergio@web.de Merchant ID: PF2Q74RBP5J3U | 重□□□□□ □□□□□司 | service@cartier-outlet.vip |
| 5 | disnaba.com | Merchant ID: HB8NVEVTXYX4S | □□□□□□ □□□□司 | service@casesnows.com |
| 6 | dssitryx.shop | luxudayjewelry@gmail.com Merchant ID: FN228QPSPNWYC | 冲冲 □ | luxudayjewelry@gmail.com luxuday@gmail.com |

| | | | | |
|---|---|---|---|---|
| 7 | eronys.shop | ArlettaVailec@gmail.com Merchant ID: JGVR4LJSJUY2U | jia tao LTD | service@shopifyhelp.net info@noticecenters.com |
| 8 | frs.fo | billionniki@hotmail.com nehiphopmku@hotmail.com Merchant ID: 27KVWZZBLBQGE | 周口惠群商□□□□司 | replicawatchessale@yahoo.com |
| 9 | goreplicawatch.com | shirong132@outlook.com Merchant ID: 5BTDZP5VUUZC2 | 孕□□□□□□□□□□司 | charygreenc@gmail.com |
| 10 | hixxwin.com | xuwei200205@outlook.com Merchant ID: JRTPDATMHXMZJ | | dengxm2020@gmail.com botao20211@163.com |
| 10 | laastar.com | | | laastarinfo@163.com |
| 11 | huanyitrade.com | cartiergood@163.com | □□ 林 | linjunyong72@gmail.com vincienlin@gmail.com |
| 11 | weidtrade.com | maimangtrade@hotmail.com Merchant ID: WD2ELX73QAM8J | 东阳市麦芒再生资源回收站 | noreply@notice.mailzh-apolo.com |
| 12 | jewsluxury.com | info@jewsluxury.com Merchant ID: F227BEMUATCCA | Jewluxury Bui Duy Khai | info@jewsluxury.com |
| 12 | jewluxury.store | | | info@jewluxury.store |
| 13 | opclock.com | rparusy@bk.ru cociobmdan@gmail.com Merchant ID: 2T78GVFRPF6JY PSU2JLWXGT274 | Socksoeu SRL | aprolexcom@gmail.com |
| 14 | qtlogqa.shop | bzuqc4723jkc@gmail.com Merchant ID: NAZ39S54GWXP6 | □□□□□ | highjewelryfactory2022@gmail.com |
| 15 | scintillacase.com | Merchant ID: 8PZGM96PA6FQ8 | 江□□□□□□□□□司 | service@scintillacase.com |
| 16 | shinybracelet.com | Merchant ID: VNZF63J783GEN | 刘富涛 | serve@shinybracelet.com |
| 17 | skwatch.site | Merchant ID: XN4HWQZCFPX5Y | Online Shop | service@wristbase.club |

| | | | | |
|---|---|---|---|---|
| 17 | wristbases.shop | Merchant ID: XN4HWQZCFPX5Y | Online Shop | service@wristbase.club |
| 18 | storevip.ga | bobbyadamse6192@gmail.com Merchant ID: WFPGJ59G3TJPS | | services@enstock1g.top |
| 18 | vipshops2m.ga | bobbyadamse6192@gmail.com lindaghj432clay@web.de Merchant ID: WFPGJ59G3TJPS | linda clay @lclay67 | services@instock2.top services@shops2p.gq |
| 19 | suricheh.com | ligeng5@outlook.com Merchant ID: DSXEKVLEGEY68 | wu han mei la ke ji you xian gong si | surichT@hotmail.com |
| 19 | surichek.com | Merchant ID: MP8THGP4AMWBU | guang zhou han yuan mao yi you xian gong si | surichT@hotmail.com |
| 19 | surichen.com | service@hanyuanfirm.com | guang zhou han yuan mao yi you xian gong si | surichT@hotmail.com |
| 19 | suricheo.com | Merchant ID: DSXEKVLEGEY68 | wu han mei la ke ji you xian gong si | surichT@hotmail.com |
| 19 | surichep.com | Merchant ID: MP8THGP4AMWBU PGSBDEL9LUBPW | guang zhou han yuan mao yi you xian gong si guang zhou ye zhang shang mao you xian gong si | surichT@hotmail.com |
| 19 | suricheq.com | service@jushabusiness.com Merchant ID: Z7BCJ773UWSP6 | xia pu xian ju sa ri yong pin jing ying bu | surichT@hotmail.com |
| 19 | halamake.com | Merchant ID: MP8THGP4AMWBU | guang zhou han yuan mao yi you xian gong si | surichT@hotmail.com |

| 19 | surich2099 a/k/a Surich Jewellery | | | |
|---|---|---|---|---|
| 19 | suriched.com | Merchant ID: GYKWKBL3WE9B4 | guang zhou shi si jian dian zi shang wu you xian gong si | |
| 19 | suricher.com | Merchant ID: V6KPECRN4FM9U | he fei qiang lve wang luo ke ji you xian gong si | |
| 19 | suriches.com | Merchant ID: V6KPECRN4FM9U | he fei qiang lve wang luo ke ji you xian gong si | |
| 19 | surichet.com | | | |
| 19 | suricheu.com | Merchant ID: GYKWKBL3WE9B4 | guang zhou shi si jian dian zi shang wu you xian gong si | |
| 19 | surichew.com | Merchant ID: V6KPECRN4FM9U | he fei qiang lve wang luo ke ji you xian gong si | |
| 19 | surichex.com | Merchant ID: V6KPECRN4FM9U | he fei qiang lve wang luo ke ji you xian gong si | |
| 19 | surichey.com | Merchant ID: V6KPECRN4FM9U | he fei qiang lve wang luo ke ji you xian gong si | |
| 19 | surichez.com | HefeiQianglueNetworkTechnology@hotmail.com Merchant ID: V6KPECRN4FM9U | he fei qiang lve wang luo ke ji you xian gong si | |
| 19 | surichoa.com | Merchant ID: V6KPECRN4FM9U | he fei qiang lve wang luo ke ji you xian gong si | |

| | | | | |
|---|---|---|---|---|
| 20 | top-watches.net | calatencu6@mail.ru<br>Merchant ID:<br>VEWVZ7G2RGFE8 | | cs.topwatches@gmail.com<br>LUCAMOISEI@MAIL.RU |
| 21 | vibelydesign.com | dengsheng305@163.com<br>Merchant ID:<br>ZDKLX6SNPC338 | Caroline CO. | hello@vibelydesign.com |
| 21 | lotteds.com | qzjmpcb@outlook.com<br>Merchant ID:<br>D5X9QBPH8NLXC | Lotteds<br>hui yue teng<br>da | service@lotteds.com<br>hello@vibely.com<br>service@allsfe.com |
| 21 | allsfe.com | | | |
| 22 | yuyaots.com | Merchant ID:<br>FGG96W3YY4DMA | 泉州南□ □ □<br>□ □ □ 司 | contact@yuyaots.com |